754 F.2d 1378
 CITY OF OAKLAND, CALIFORNIA, Acting By and Through Its BOARD
OF PORT COMMISSIONERS (PORT OF OAKLAND), Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Pacific Gas and Electric Co., State of California, and
Public Utility Commission, Intervenors.
 No. 83-7933.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 2, 1984.
Decided March 5, 1985.
 
 Carl W. Ulrich, Chapman, Duff, & Paul, Washington, D.C., for petitioners.
 Joshua Rokach, F.E.R.C., Washington, D.C., for respondent.
 Petition for Review of Orders of the Federal Energy Regulatory Commission.
 Before GOODWIN, POOLE and BOOCHEVER, Circuit Judges.
 BOOCHEVER, Circuit Judge:
 
 
 1
 This case concerns a ruling by respondent Federal Energy Regulatory Commission (FERC or the Commission) that the sale of electricity to an airport operated by petitioner City of Oakland does not constitute a "sale of electric energy at wholesale" within the meaning of the Federal Power Act, 16 U.S.C. Secs. 791a-828c (1982), and is therefore not within the rate jurisdiction of FERC.
 
 
 2
 On appeal, petitioner argues that the sale to it of electricity which it then sells to airport tenants is a sale at wholesale or, alternatively, that remand is required because FERC abused its discretion in not holding a full evidentiary hearing on the issue. Because even after giving due deference to the Commission's interpretation we conclude that this is a wholesale transaction under the plain meaning of the statute, we reverse.
 
 FACTS
 
 3
 The Port Department was established as a department of the City of Oakland pursuant to the City's charter. It owns and operates, among other things, the Metropolitan Oakland International Airport and is empowered by the City's charter to provide the airport with necessary facilities. In order to do so, it maintains an electrical distribution system with which it distributes electricity to the roughly one hundred businesses which lease space at the airport. Approximately sixty-nine percent of the electricity purchased by the Port is used by businesses which have separate meters and are billed individually by the Port Department for the amount of electricity actually consumed. The remainder is used either in the common areas and servicing of the airport itself, or by small tenants without meters whose leases provide electricity without separate charge.
 
 
 4
 Since about 1936 the Port Department has purchased its electricity from the Pacific Gas & Electric Company (PG & E) at retail rates regulated by the California Public Utilities Commission (CPUC). The existing sale contract stipulates that the Port Department shall charge its tenants the same rate CPUC would permit PG & E to charge those tenants if it served them directly. In recent years the difference between the rate charged the tenants and the rate the Port Department pays PG & E has not met the expense of maintaining the Port's internal distribution system.
 
 
 5
 The Port Department then sought a ruling from FERC that PG & E must sell to it at lower wholesale rates pursuant to the Federal Power Act. The Port Department moved for summary disposition of the question whether FERC, rather than CPUC, had jurisdiction of the rates it paid, contending that no material facts were in dispute. PG & E's answer to that motion agreed summary disposition would be appropriate. FERC dismissed the Port Department's complaint summarily, finding that it lacked jurisdiction. When FERC denied a rehearing, the Port Department petitioned for review by this court.
 
 DISCUSSION
 I. Jurisdiction
 
 6
 The Commission's decision that it was without jurisdiction involved a question of law rather than fact and must be upheld if supported by an adequate basis in law. Phillips Petroleum Co. v. Wisconsin, 347 U.S. 672, 678, 74 S.Ct. 794, 796, 98 L.Ed. 1035 (1954); Alexander v. FERC, 609 F.2d 543, 546 (D.C.Cir.1979). At the same time, we are mindful that an agency's interpretation of its authorizing statute is to be accorded a measure of deference. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); Pacific Gas & Electric Co. v. FERC, 746 F.2d 1383, 1386 (9th Cir.1984); Casey v. FTC, 578 F.2d 793, 798 (9th Cir.1978). But as this court has recently observed, "[t]he courts ... are the final authorities on issues of statutory construction. We must reject administrative constructions of a statute that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." Markair, Inc. v. CAB, 744 F.2d 1383, 1385 (9th Cir.1984) (citing Federal Election Commission v. Democratic Senatorial Campaign Committee, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981)) (citation omitted).
 
 
 7
 The Federal Power Act confers upon FERC jurisdiction over any "sale of electric energy at wholesale in interstate commerce," 16 U.S.C. Sec. 824(b)(1), and defines a sale at wholesale as a sale "to any person for resale," 16 U.S.C. Sec. 824(d). There is no dispute that the electricity sold to the Port Department flows interstate and the plain meaning of a "resale" seems to encompass at least the transaction with individually-metered tenants.[1] The Port Department purchases electricity from PG & E at retail rates. By means of an extensive system that it owns and maintains, it conveys that electricity to tenants who purchase individually metered amounts at a different rate, which PG & E itself would have charged had it served the tenants.
 
 
 8
 The Supreme Court found a jurisdictional resale on similar facts in United States v. Public Utilities Commission, 345 U.S. 295, 73 S.Ct. 706, 97 L.Ed. 1020 (1953). In that case, a power company sold electricity to the Navy and to Mineral County, Nevada. Some fifteen to thirty percent of the power taken by the Navy was redistributed to personnel at a Navy housing project who had individual meters and were billed accordingly. Id. at 298, 73 S.Ct. at 709. Substantially all electricity sold to the county was redistributed. Id. The Court found each of these situations constituted a jurisdictional resale. Accord California Electric Power Co. v. Federal Power Commission, 199 F.2d 206 (9th Cir.1952), cert. denied, 345 U.S. 934, 73 S.Ct. 794, 97 L.Ed. 1362 (1953) (related case); see also Alexander v. FERC, 609 F.2d 543, 550 (D.C.Cir.1979) (transactions which were metered and billed individually distinguished from others not deemed to be "resales").
 
 
 9
 Yet FERC contends that the Port Department is most aptly characterized as a landlord that redistributes electricity to a few select tenants--a status it claims is inconsistent with being a reseller. FERC's attempts to distinguish the Port Department from the Navy town and the county in Public Utilities Commission are unconvincing. In fact, in that case, the Supreme Court held explicitly that municipalities could be resellers of electricity, 345 U.S. at 312-16, 73 S.Ct. at 716-18, and inferred that the provisions of the Federal Power Act were intended to be especially protective of municipalities, 345 U.S. at 312-13, 73 S.Ct. at 716. Like Mineral County, the Port Department is a political subdivision of a state and at least in this case, where the department exercises all the powers and performs all the duties of the City in a major municipal function, FERC will not be relieved of jurisdiction on the ground that the Department does not supply electricity to all the inhabitants of Oakland.
 
 
 10
 The Commission has presented no legal basis for the proposition that a major municipal department specifically empowered to operate a redistribution system is not a reseller of electricity. The cases it proffers are inapposite. For example, in Almeda Mall, Inc. v. Houston Lighting & Power Co., 615 F.2d 343 (5th Cir.), cert. denied, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980), owners of shopping malls requested that a utility sell them electricity which they intended to resell to their tenants. The utility refused and the mall owners sued alleging an antitrust violation. The Fifth Circuit found no such violation because, among other things, the owners did not propose to compete with the utility, but would have been middlemen between it and their tenants. 615 F.2d at 353. The opinion does not address whether the owners would have been resellers. In Story v. Richardson, 186 Cal. 162, 198 P. 1057 (1921), the Supreme Court of California divined from the legislative history of an amendment to the state's constitution that its tax on transmitters of electricity was intended to apply only to "public utilities." This interpretation of a wholly different enactment does not impeach the plain meaning of a "resale" under the Federal Power Act.
 
 
 11
 The commission presents a "parade of horribles" contending that a decision in favor of the City will force the Commission to take jurisdiction over every shopping center, commercial building and apartment where tenants are metered separately. If this presents a legitimate concern "[t]he proper course for the [agency] is to petition Congress to amend the Act, rather than to bypass the statute." Markair, 744 F.2d at 1386. Here, however, we do not address those issues, but hold only that when a municipality maintains an extensive system for transferring and metering interstate electricity its purchases are at wholesale and subject to the Federal Power Act.
 
 II. Evidentiary Hearing
 
 12
 From our holding that the undisputed facts bring this transaction within the jurisdiction of FERC it follows that no evidentiary hearing is required to resolve further factual ambiguities alleged by the Port Department. See, e.g., Costle v. Pacific Legal Foundation, 445 U.S. 198, 219-20, 100 S.Ct. 1095, 1107-08, 63 L.Ed.2d 329 (1980) (evidentiary hearing not required when disputed facts are not material); Sierra Association for Environment v. FERC, 744 F.2d 661, 663-64 (9th Cir.1984) (same); Georgia-Pacific Corp. v. EPA, 671 F.2d 1235, 1241 (9th Cir.1982) (same); see also Pacific Gas & Electric Co., 746 F.2d at 1386.
 
 
 13
 The ruling of the FERC is reversed and the case is remanded with instructions to grant summary disposition in favor of the City of Oakland.
 
 
 14
 REVERSED and REMANDED.
 
 
 
 [1]
 The Commission has not argued specifically that if it has jurisdiction of the metered tenants it is nonetheless without jurisdiction over the thirty percent of electricity used by the airport and tenants without individual meters and we do not pass on that question. Compare United States v. Public Utilities Commission, 345 U.S. 295, 317-18, 73 S.Ct. 706, 718-19, 97 L.Ed. 1020 (1953) ("[W]e need not decide the question of whether ... 'commingling'--of power resold with that consumed directly by the purchaser--requires entire federal jurisdiction.... [T]his would turn, of course, on whether an essentially separate transaction covering the power directly consumed by the purchaser is identifiable.") with California Electric Power Co. v. Federal Power Commission, 199 F.2d 206, 209 (9th Cir.1952) (Commission has jurisdiction over the total where "the supposed nonjurisdictional part of the energy is indistinguishable at the point of sale from the remainder"), cert. denied, 345 U.S. 934, 73 S.Ct. 794, 97 L.Ed. 1362 (1953)